UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CULLEN J. DUPUY AND
MARY E. DUPUY

CIVIL ACTION

VERSUS

NO. 11-336-JJB

USAA CASUALTY INSURANCE COMPANY

## RULING ON MOTION TO DISMISS

Before the Court is a motion (Doc. 13) by defendant USAA Casualty Insurance Company ("USAA") under Fed. Rule Civ. P. 12(b)(6) to dismiss[1] the complaint (Doc. 1) of plaintiffs Cullen J. Dupuy and Mary E. Dupuy ("the Dupuys") alleging coverage under their homeowners' insurance policy for damages to their home and its contents caused by Chinese drywall. The Dupuys filed an opposition (Doc. 17) and USAA replied (Doc. 18). Oral argument is unnecessary. Diversity jurisdiction exists under 28 U.S.C. § 1332.

I.

The following facts are taken as true based on the Dupuys' complaint. The Dupuys allege their Baton Rouge home and its contents were damaged by Chinese drywall. They allege the drywall "emits odorous gases that cause damage to air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items." (Compl., Doc. 1, ¶ 7). They sought coverage under the terms of their homeowners' insurance policy with USAA. They claim the damages to their home's insulation, trimwork, floors, cabinets, carpet, and other items are covered under the "ensuing loss" portion of their policy.[2]

---

[1] USAA has already filed an answer in this case, (*see* Doc. 8), so technically this motion to dismiss is converted into a motion for judgment on the pleadings under Fed. Rule Civ. P. 12(c). *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).
[2] Plaintiffs concede that any alleged damages to personal property are not recoverable under the policy. (Memo. in Opp., Doc. 17, Section VI, p. 24).

1

The suit seeks damages due to the alleged breach of the insurance contract, breach of USAA's duty of good faith and fair dealing, and violation of La. R.S. 22:1973 and La. R.S. 22:1892 for statutory bad faith failure to properly adjust and pay their claim in a timely manner.

II.

A motion for judgment on the pleadings under Fed. Rule Civ. P. 12(c) is evaluated on the same basis as a motion to dismiss under Fed. Rule Civ. P. 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010). Pursuant to Fed. Rule Civ. P. 12(b)(6), on a motion to dismiss for failure to state a claim, the Court accepts all well-pleaded, non-conclusory facts in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility." *Id.* at 557. When well-pleaded factual allegations populate the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. Courts may consider not only the complaint itself, but also documents attached to the complaint or documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). The facts in the complaint are viewed collectively, not scrutinized in strict isolation. *Id.* Courts are permitted to take public records and others matters of judicial notice into account when evaluating a motion to dismiss. *Hall v. Hopkins*, 305 Fed.Appx. 224, 227-28 (5th Cir. 2008); *Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir. 1995).

III.

USAA argues the damages complained of do not constitute "direct, physical loss" and thus do not come within the policy's coverage. It also argues that four different exclusions independently exclude coverage, even if such loss occurred. The four exclusions are the defective building material exclusion, the latent defect exclusion, the pollutant exclusion, and the corrosion damage exclusion. This motion therefore requires the Court to examine and interpret the provisions of the Dupuys' homeowners' insurance policy. After reviewing the applicable legal standards for construction of insurance contracts in Louisiana, the Court treats each of USAA's arguments in turn.

*A. Louisiana Law on Interpretation of Insurance Contracts*

Insurance policies are contracts between the insurer and insured and are construed in accord with general rules of contract interpretation. *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003). Words and phrases must be given their ordinary meaning unless they have acquired technical meaning. *Id.* Similar to most homeowners' policies, the policy at issue here is an "all risk" policy where all risks are covered unless specifically excluded. *See Dawson Farms, LLC v. Millers Mut. Fire Ins. Co.*, 794 So.2d 949, 951 (La. App. 2d Cir. 2001). Insurers bear the burden of proving the applicability of an exclusionary clause within a policy. *Jones v. Estate of Santiago*, 870 So.2d 1002, 1010 (La. 2004). Ambiguities in policy exclusions are construed to afford coverage to the insured. *Yount v. Maisano*, 627 So.2d 148, 151 (La. 1993). A determination of clarity or ambiguity regarding a policy provision is a question of law. *Cadwallader*, 848 So.2d at 580.

*B. Are the Alleged Damages Direct, Physical Losses Under the Policy?*

The policy at issue insures "against risks of direct, physical loss to property…." (Policy, Doc. 13-5, p. 13). The policy provides in Coverage A that the Dupuys' dwelling is considered part of the property the policy insures. (*Id.*, p. 5). Since the policy does not define direct, physical loss, USAA looks to *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269-71 (5th Cir. 1990) for a favorable definition.

In *Trinity*, the Fifth Circuit found "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state…." 916 F.2d at 270-71. However, *Trinity* involved a builder's risk policy for insurance on a seafaring vessel. *Id.* at 268. As courts and commentators have noted, such commercial policies differ in nature and purpose from the homeowners' policy at issue here. *See, e.g., In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 759 F.Supp.2d 822, 833 (E.D. La. 2010) (citing Russ, Couch on Insurance §§ 1:2, 1:53 (3d ed. 2010)). Moreover, the logic of *Trinity* was based primarily on the fact that the plaintiff in that case, as the builder-insured, could not use the physical loss language to cover its own construction mistakes, even though the same language could cover accidents caused by such defective workmanship. 916 F.2d at 269-70. The Court here is not faced with a situation where plaintiffs caused the risk for which they now seek coverage.

Moreover, even the *Trinity* panel conceded that its interpretation would "cover accidents resulting from defective design or workmanship, but not the cost of repairing the defect itself." *Id.* at 271. Thus, even reading *Trinity* at face value, the policy could still cover accidents resulting from the defective drywall, even if it would not cover the costs of repairing or replacing the drywall itself. In other words, while the drywall itself may have been inherently defective from the outset (*i.e.*, never in a "satisfactory state" under *Trinity*), the other parts of the home

4

which were subsequently damaged by the drywall's "off-gassing" were presumably in a satisfactory state until exposed to the drywall's output (*i.e.*, the "external event"), subsequently changing those parts into an unsatisfactory state and thereby comporting with the *Trinity* rule. Defendants' position therefore offers them no shelter from coverage under the "direct, physical loss" language.

This conclusion is bolstered, as noted by Judge Fallon in *In re Chinese Drywall*, 759 F.Supp.2d at 832, a case with substantially similar facts and construing the same policy, by language elsewhere in the policy which defines "property damage" to include loss of use of tangible property. (Policy, Doc. 13-5, p. 8). Since each provision in a contract must be interpreted in light of the other provisions so as to give meaning to the whole, *see* La. C.C. art. 2050, the Court finds the "property damage" definition bears directly on the meaning of "direct, physical loss to property." To hold otherwise would be to render superfluous the property damage definition, an outcome disfavored in the law. La. C.C. art. 2049 (restating former La. C.C. art. 1951 (1870)); *Home Ins. Co. of Illinois v. Nat'l Tea Co.*, 588 So.2d 361, 364 (La. 1991) (holding that a general rule of contract interpretation seeks to avoid a construction which renders a contractual provision virtually nugatory should be avoided in favor of one giving the clause effect). This conclusion also accords with the Louisiana Fifth Circuit Court of Appeals' decision in *Ross v. C. Adams Construction & Design, L.L.C.*, 70 So.3d 949, 952 (La. App. 5th Cir. 2011), finding a direct, physical loss because the inherent qualities of the Chinese drywall required removal and replacement.

### C. Do the Policy Exclusions Apply?

Having found the Dupuys suffered a direct, physical loss triggering coverage under their policy, the Court must consider whether any of the four claimed exclusions apply to defeat

coverage. This puts the plaintiffs in the tough predicament of claiming the drywall is neither defective nor its off-gassing corrosive or a pollutant, but nonetheless damage-causing. In this endeavor, unfortunately, they fail.

1. Defective Materials Exclusion

The USAA policy excludes from coverage, among other things, "loss consisting of any of the following":

> c. Faulty, negligent, inadequate or defective:
> ***
>   (2) design, … workmanship, … [or] construction … ; [or]
>   (3) materials used in … construction … ;
> ***
> of part or all of any property whether on or off the residence premises.

(Policy, Doc. 13-5, p. 16). However, the policy does cover "any loss that ensues from the following, that is not otherwise excluded or excepted…." (*Id.*).

The policy contains no definitions of these terms. Judge Fallon looked to dictionary definitions to obtain the ordinary meaning of these words and, when read together, found that the faulty and defective materials definition "constitutes a physical thing tainted by imperfection or impairment." *In re Chinese Drywall*, 759 F.Supp.2d at 844. The Court finds this definition appropriate.

Imperfections or impairments of physical things need not wholly defeat the intrinsic purpose of the thing itself in order to qualify under this exclusion. In *Ross*, the Louisiana Fifth Circuit found that the faulty material exclusion could apply even when the property in question serves its intended purpose. 70 So.3d at 953. *Ross* went on to define intended purpose broadly as "a component of a livable residence" and found Chinese drywall-infested homes were not livable residences because of the "inherent qualities of emitting sulfuric gas." *Id.* Similarly,

6

Judge Fallon found the drywall served its intended purpose as a room divider and insulator but nonetheless qualified under the exclusion, analogizing the drywall to building components containing asbestos that courts have previously determined fit under the same exclusion. *In re Chinese Drywall*, 759 F.Supp.2d at 845-46. While plaintiffs argue the damage caused by the drywall was based on a quality distinct from the roles it was intended to serve, the courts have not read the exclusion so narrowly. *See, e.g., Bishop v. Alfa Mut. Ins. Co.*, 796 F.Supp.2d 814, 823-25 (S.D. Miss. 2011); *Lopez v. Shelter Ins. Co.*, --- F.Supp.2d ----, No. 4:10CV55TSL-LRA, 2011 WL 2457872, at **4-6 (S.D. Miss. June 16, 2011); *TravCo Ins. Co. v. Ward*, 715 F.Supp.2d 699, 712-13 (E.D. Va. 2010) (all finding faulty material exclusion to encompass imperfections that do not defeat intended purpose of material itself). The Court therefore follows these four courts in finding the faulty and defective material exclusion applies to exclude from coverage any "loss consisting of … faulty materials." The plain text of the exclusion therefore puts the drywall itself outside the realm of coverage under the policy. Whether the ensuing loss language applies to afford coverage for other items affected by the drywall off-gassing will be treated below.

2. <u>Corrosion Exclusion</u>

The corrosion exclusion states that USAA does not "insure loss … caused by or consisting of … smog, rust, or other corrosion, mold, wet or dry rot…." (Policy, Doc. 13-5, p. 15). Plaintiffs state, simplistically and somewhat disingenuously, that the damage is not caused by corrosion but by the drywall itself. (Memo. in Opp., Doc. 17, p. 22). But the allegations they are making in another pending Chinese drywall case, *Payton v. Knauf Gips KG*, No. 2:09-cv-07628-EEF-JCW (E.D. La. 2009), belie the generalized allegations brought here. In the *Payton* omnibus class complaint, of which the Dupuys are class members, they directly alleged that

"[s]ulfides and other noxious gases, such as those emitted from [Chinese] drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, … electrical wiring, copper, electronic appliances and other metal surfaces and property)." (*Payton* Complaint, Doc. 13-3, ¶ 2613). Further down, the *Payton* plaintiffs again allege "the drywall caused corrosion and damage to personal property…." (*Id.*, ¶ 2615; *see also id.*, ¶ 2619 (realleging corrosive effects of drywall off-gassing)).

However, after the courts began dismissing cases based in part on the corrosion exclusion, *see, e.g., In re Chinese Drywall*, 759 F.Supp.2d at 846-48; *TravCo*, 715 F.Supp.2d at 713-15, the plaintiffs filed suit here attempting to avoid the corrosion exclusion by simply failing to tie together the allegations of off-gassing, which they make here, with the resultant corrosion, which they avoid. (*See* Complaint, Doc. 1, ¶ 7 (alleging drywall emits odorous gases that cause damage to air-conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring, and other household items)). Moreover, plaintiffs in this case do not offer another theory for how the noxious gases have caused damage to the coils, wiring, and other metallic items. Instead, they hope their more ambiguous allegations will be resolved in their favor and unlock the doors to discovery.

While insurers bear the burden of proving the application of the exclusion, the Court finds that burden met when, as here, plaintiffs have alleged off-gassing results in corrosion to certain items in another suit and have failed to proffer any reasonable alternative theory in this suit for how the gassing causes damage to the exact same property. It is true that Fed. Rule Civ. P. 8 permits alternative and inconsistent pleadings, but it does not permit plaintiffs to avoid the corrosion exclusion by failing to make the requisite factual allegations necessary to show an entitlement to recovery. Plaintiffs simply cannot state a claim for relief that, on the one hand,

seeks to avoid judicial notice of the allegations of corrosion in another case yet, on the other hand, fails to substitute a discernible theory for how damage occurred here. The Court takes judicial notice of plaintiffs' allegations in *Payton* and therefore cannot draw favorable inferences from plaintiffs' ambiguous allegations. Faced with these fatal defects, the Court must grant the motion to dismiss.[3]

Although there are allegations regarding non-metallic items in the house presumably not susceptible to corrosion, (*see* Complaint, Doc. 1, ¶ 8 (alleging damage to insulation, trimwork, floors, cabinets, carpet, etc., resulting from drywall)), the Court is in no position to determine the applicability of any of the exclusions to these particular portions of the Dupuys' house. The damage allegations are simply too vague to hazard treatment at this time and must therefore be dismissed.

    3. <u>Latent Defect and Pollutions Exclusions</u>

The Court has found the other exclusions encompass most of the property damage claims—the faulty material exclusion covers the drywall itself, and the corrosion exclusion covers the metal materials corroded by the drywall off-gassing—and the remaining damage allegations are too vague and conclusory to construe. The Court therefore pretermits exploration of the latent defect and pollution exclusions.

### D. *Do the Ensuing Loss Provisions Otherwise Provide Coverage?*

While the normal coverage exclusions apply to the drywall and metal-containing items under the defective materials and corrosion exclusions, respectively, plaintiffs argue that they nevertheless may receive coverage for the remaining damages under the ensuing loss provisions

---

[3] Since the policy here contains language excluding damage not only caused by corrosion, but damage which consists of the corrosion itself, it is clear that all of the property damage allegations to metal-containing materials from the drywall off-gassing (Complaint, Doc. 1, ¶ 7) are embraced by the corrosion exclusion.

of the policy. (*See* Memo. in Opp., Doc. 17, pp. 10-11 (describing how alleged damages from ¶ 8 in Complaint could be covered)). The policy language could conceivably provide coverage under the ensuing loss provisions. However, plaintiffs have done themselves no favors by intentionally avoiding certain factual allegations they are required to make under the pleading standards of *Twombly* and *Iqbal*. Their allegations regarding metallic items clearly implicated the corrosion exclusion, and their attempt to avoid its effect did not succeed. If they wish to invoke the ensuing loss provisions to obtain coverage over any remaining damage items with any degree of success, they must plead more facts than the conclusory allegations contained in their complaint. (Doc. 1, ¶ 8). More specifically, plaintiffs must allege, at the very least, *how* the drywall causes damage to the trimwork, carpet, etc., not simply *that* it does so. Only then can they conceivably fulfill their duty under the pleading standards to show an entitlement to relief that is factually sufficient, legally cognizable, and plausible on its face.

IV.

Accordingly, USAA's motion to dismiss (Doc. 13) is GRANTED without prejudice.

Signed in Baton Rouge, Louisiana, on March 9, 2012.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**